# Porter, for use, *v.* Vanderlin, Appellant.

*Execution — Subrogation — Sheriff's sale — Judgment — Lease — Act of
April 22, 1856.*

A lessee under an oil lease who has bought judgments which were liens
upon the leased premises prior to the execution of the lease, has a right
to issue execution on the judgments, and sell the property subject to his
leasehold estate.

In such a case the lessee has an equity to have the estate of the defend-
ant in the judgments sold in the inverse order of the conveyances made
by him, and the court, under the act of April 22, 1856, P. L. 532, has au-
thority to make an order enforcing this equity.

Argued Oct. 17, 1893.   Appeal, No. 139, Oct. T., 1893, by
defendant, Robert Vanderlin, from order of C. P. Butler .Co.,
Sept. T., 1888, No. 72, dismissing exceptions to levy and in-
quisition, in Levi Porter et al., executors, for use of A. F.
Hollister, now for use of A. G. Egbert and George B. Sheasley,
v. Robert Vanderlin.   Before GREEN, WILLIAMS, McCOLLUM,
MITCHELL, DEAN and THOMPSON, JJ.

Exceptions to levy and inquisition.   Before HAZEN, P. J.

From the record it appeared that A. G. Egbert and George
R. Sheasley were the owners of two oil leases upon the prop-.
erty of defendant.   Prior to the execution of the leases, five
judgments had been entered against defendant, all of which
were owned by A. F. Hollister.   After the leases had been
executed Hollister issued execution, whereupon Egbert and

Sheasley paid the amount of the judgments into court, and an order was made subrogating them to Hollister's rights.  See Hollister's Ap., 146 Pa. 138.  Egbert and Sheasley issued execution, and a levy and inquisition was made.  Defendant then filed the following exception:

" The writ of fi. fa. and the levy taken of defendant's land make it subject to the two mineral mining estates now owned by the use plaintiffs and given by Robert Vanderlin defendant, one dated 1st day of July, 1884, the other the 4th day of March, 1890 ; these two mining estates, as they are termed in the fi. fa. and levy, defendant claims are forfeited by reason of noncompliance by the lessees and assigns of the covenants therein set forth.  The sheriff's duty is plain in such case, which is to sell the entire interest of the debtor in the land without troubling himself to ascertain what that interest may be ; whether a mineral estate is carved out of the land levied upon or whether or not it is forfeited or valid, such action is a clear violation of duty, whether at the instance of plaintiffs or their counsel. The sheriff is bound to sell the defendant's whole interest in the land ; for this reason the fi. fa., levy and inquisition should be set aside at cost of plaintiffs."

The court made the following order :

" And now, to wit, May 13, 1893, upon due consideration of the defendant's exceptions to the levy and the inquisition had upon the above entitled writ of fieri facias, the exceptions are dismissed and the inquisition is approved, and the use plaintiffs are allowed and awarded a writ of venditioni exponas to sell the whole of ' the stone house property ' described in the inquisition, subject to the mining estates of the use plaintiffs therein, as described in the levy."

*Error assigned* was above order, quoting it.

*John M. Thompson, J. C. Vanderlin* with him, for appellant, cited: Reigle v. Seiger, 2 P. & W. 340 ; Fretz v. Heller, 2 W. & S. 397 ; McLaughlin v. Shields, 12 Pa. 283 ; Aulenbaugh v. Unbehauer, 8 Watts, 48.

*Carl I. Heydrick* and *J. H. Osmer, C. Heydrick* and *S. F. Bowser* with them, for appellee, cited: Act of April 22, 1856,

P. L. 532; Porter v. Vanderlin, 146 Pa. 138; Roddy's Ap., 72 Pa. 98; Arna's Ap., 65 Pa. 72; Phelps's Ap., 89 Pa. 546; 1 T. & H. Pr. (Brightly's ed.) § 1014.

PER CURIAM, October 30, 1893:

The order made by the learned court below was necessary to be made in order to protect the appellees from a palpable fraud, and it was entirely within the powers of the court under the act of April 22, 1856. When the leases were made the lessor remained the owner of the fee subject to the operation of the leases. The estate of the owner of the fee therefore was bound to contribute first to the liquidation of the debt, which bound both the fee and the leasehold estates. An unsuccessful effort was made to destroy the leaseholds by means of the judgments, which antedated the leases. When the appellees acquired the ownership of those judgments by having paid full value in cash for them, they had a right to have such use of them made as would protect their leaseholds, and therefore had an equity to have the estate of the defendant in the judgments sold in the inverse order of the conveyances made by him. The act of 1856 gives the most ample power to the courts to administer full equitable relief in such circumstances. It says: " And the court shall have power to direct to what uses the said judgment shall be assigned, and, when assigned, direct all executions thereupon so as to subserve the rights and equities of all parties whose real estate shall be liable thereto; and if the plaintiff shall refuse to accept his debt and make such assignment of his judgment, the executions thereupon in the hands of the plaintiff shall be so controlled and directed by the court as to subserve said rights and equities." The fee of the defendant in the judgments was subject to the leaseholds of the appellees, but the judgments antedated the leases, and if they were literally executed the leases would be destroyed. Having acquired the ownership of the judgments by full payment for them, the defendant is not harmed, and the appellees are saved against loss by selling the defendant's fee subject to the leases, as that was precisely the way the defendant held the land when the leases were made. His interest then was the fee subject to the leases, and the sale of that precise interest was what was ordered by the learned court below. Reigle v. Sieger, 2 P.

& W. 340, and its cognate cases have nothing to do with this question. They simply prohibit a reservation by the sheriff of an interest for the defendant in a sale upon a vend. ex. The appellees were compelled to pay a large sum for the acquisition of liens prior to their leases. They have a right to have that money back out of the defendant's remaining fee in the land without a sacrifice of their leases, and that is exactly what was given them by the order of the court below.

The order of the court below is affirmed at the costs of the appellant.